**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERFX WIRELINE SERVICES, LLC, <br><br> Defendants. | Civil Action No: 6:21-cv-00371-ADA <br><br> ███████████████ |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE FOR POTENTIAL CONSOLIDATION UNDER 28 U.S.C. § 1404(a) AND FED. R. CIV. P. 42(a)

*Confidential – Outside Attorneys' Eyes Only*

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................... 1

II.  Procedural Background ........................................................................................ 1

III.  Legal Standards .................................................................................................. 4

IV.  Argument ............................................................................................................ 5

    A.  The Transfer Order Moots PerfX's Motion. .......................................... 5

    B.  Compelling Circumstances Require Adjudication of this Action in the
    Western District of Texas. ...................................................................... 7

        1.  The Private Interest Factors Favor Retention in the WDTX. ...... 7

            i.  Judicial Economy and Consistency Weighs Heavily Against
            Transfer. ........................................................................ 7

            ii.  The Convenience of the Parties and Witnesses, the Cost of
            Attendance, and Relative Access to Sources of Proof Weigh
            Against Transfer ............................................................ 9

        2.  The Public Interest Factors Favor Retention in the WDTX. ..... 12

            i.  WDTX's Localized Interest Weighs Heavily Against
            Transfer. ...................................................................... 12

            ii.  Administration difficulties factor favors retention in the
            WDTX. ......................................................................... 15

V.  Conclusion ........................................................................................................ 15

*Confidential – Outside Attorneys' Eyes Only*

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*,
    512 F.Supp.2d 1039 (S.D. Tex. 2007) ........................................................................ 9

*Bedrock Logistics, LLC v. Braintree Lab'ys., Inc.*,
    No. 3:16-CV-2815-M, 2017 WL 1547013 (N.D. Tex. Apr. 28, 2017) ............................ 4

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
    711 F. Supp. 2d 626 (E.D. Va. 2010) ........................................................................ 8

*Cook v. Atchison, Topeka & Santa Fe Ry. Co.*,
    816 F. Supp. 667 (D. Kan. 1993) ............................................................................ 9

*Duha v. Agrium, Inc.*,
    448 F.3d 867 (6th Cir. 2006) .................................................................................. 12

*DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*,
    No. 6:20-cv-00069-ADA, 2020 WL 3259807 (W.D. Tex. June 16, 2020) ...................... 7

*Elecs. for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005) ................................................................................ 4

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) ........................................................................ 9, 15

*Epic Tech, LLC v. Arno Res., LLC*,
    No. 1:20-CV-577-LY, 2020 WL 5351078 (W.D. Tex. Sept. 4, 2020) ............................ 4

*Excentus Corp. v. Kroger Co.*,
    No. 3:10–CV–0483–B, 2010 WL 3606016 (N.D. Tex., Sept. 16, 2010) ..................... 4, 6

*Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*,
    No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) ...................................... 4

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) .................................................................................. 4

*Hart v. Donostia LLC*,
    290 F. Supp. 3d 627 (W.D. Tex. 2018) ...................................................................... 5

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) .................................................................... 5, 7, 12

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .............................................................................. 15

*In re Hoffmann-La Roche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) .............................................................................. 12

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) .............................................................................. 13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................................. 5, 8

*Confidential – Outside Attorneys' Eyes Only*

*Konami Digit. Ent. Co. v. Harmonix Music Sys., Inc.*,
  No. 6:08-cv-286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ...................................... 10

*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ..................................................................................... 4, 6

*Mission Ins. Co. v. Puritan Fashions Corp.*,
  706 F.2d 599 (5th Cir. 1983) .......................................................................................... 5

*NexTier Completion Sols. Inc. v. DynaEnergetics Europe GmbH*,
  No. H-21-1328, 2021 WL 3620068 (S.D. Tex. Aug. 16, 2021) ......................................... 6

*Potter Voice Techs. LLC v. Apple, Inc.*,
  No. 12-cv-01096-REB-CBS, 2013 WL 1333483 (D. Colo. Mar. 29, 2013) ..................... 9

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997) ...................................................................................... 8

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) .......................................................................................... 4

*Serco Services Co., L.P. v. Kelley Co., Inc.*,
  51 F.3d 1037 (Fed. Cir. 1995) ........................................................................................ 5

*Whistler Group v. PNI Corp.*,
  No. 3:03-CV-1536-G, 2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ............................. 8

**Statutes**

28 U.S.C. § 1404 .............................................................................................. 1, 2, 5, 9

35 U.S.C. § 102 ...................................................................................................... 8

35 U.S.C. § 103 ...................................................................................................... 8

**Rules**

Rule 12 ...................................................................................................................... 6

*Confidential – Outside Attorneys' Eyes Only*

## I.   INTRODUCTION

PerfX Wireline Services, LLC's ("PerfX")[1] improperly filed anticipatory declaratory judgment lawsuit[2] was transferred here to the Western District of Texas ("WDTX") on September 15, 2021, the District Court of Colorado having conducted a fulsome review of the 28 U.S.C. § 1404(a) convenience factors (the "Transfer Order"). The Transfer Order moots PerfX's pending Motion to Transfer Venue for Potential Consolidation ("Motion") that seeks to send this Action to the District of Colorado. Dkt. 12. Because of the substantial overlap in these cases, this Court, as the second-filed Court, should give deference to the first-filed Court's ruling, deny the Motion, and consolidate the transferred Colorado Action with this Action.   Moreover, as already determined in the Transfer Order, the 1404(a) factors dictate retention of this case in the WDTX as the location of a substantial portion of the sources of proof and key witnesses, the significant local interest due to the connections of both DynaEnergetics and PerfX to this District and situs of the majority of the infringing acts.   Finally, judicial economy favors adjudicating this case in the WDTX along with several other pending lawsuits filed by DynaEnergetics seeking to enforce its rights in the same patent-in-suit.[3]

## II.   PROCEDURAL BACKGROUND

On September 11, 2020, shortly after DynaEnergetics received a Notice of Allowance for the '697 Patent, Lisa Moyles—as counsel for DynaEnergetics Europe—sent PerfX a "DynaStage Patent Notice" letter that notified PerfX its XConnect system infringes DynaEnergetics Europe's

---

[1] PerfX Wireline Services, LLC recently changed its name to XConnect, LLC and has filed a notice of name change with the Court. Defendant will be referred to herein as "PerfX." The circumstances regarding the Defendant's sale of a portion of its business and subsequent name change is further discussed *infra* at note 10.

[2] *XConnect, LLC v. DynaEnergetics U.S., Inc., et al*, No. 1:20-cv-03665-RM-MEH (D. Colo.) (hereinafter the "Colorado Action").

[3] U.S. Patent No. 10, 844,697 (the "'697 Patent").

1

patents related to the DynaStage® perforating system. Dkt. 1-5 at 1; Ex. A,[4] Thomas Dep. at 141:21-142:14. PerfX responded on November 18, 2020, requesting a claim chart comparing the claims of the '697 Patent with PerfX's XConnect system. Dkt. 1-6; Ex. A at 142:15-144:5.  On November 25, 2020, Ms. Moyles notified PerfX that the '697 Patent had issued the previous day, sent a claim chart demonstrating how PerfX's XConnect system infringes Claim 1 of the '697 Patent and attached a copy of a patent infringement suit asserting the '697 Patent against one of PerfX's competitors in the WDTX. Dkt. 1-7; Ex. A at 144:25-145:4. PerfX's President Charlie Thomas believed after this exchange that DynaEnergetics would likely sue PerfX if it did not stop manufacturing the XConnect gun. Ex. A at 147:16-22.

Knowing DynaEnergetics had already filed one '697 Patent infringement action in the WDTX, PerfX filed the anticipatory Colorado Action on December 15, 2020, seeking a declaratory judgment of non-infringement of the same patent because "PerfX has a real and imminent belief that suit will be filed against it." Dkt. 11-2 ¶ 26.  On February 12, 2021, DynaEnergetics moved to transfer the Colorado Action to the WDTX pursuant to 28 U.S.C. § 1404 (a). Dkts. 11-4, 22-2; Ex. B.  The Transfer Order granting DynaEnergetics' motion found:

- "The present action appears to be motivated at least in part by the hope of avoiding being sued in the Western District of Texas since Plaintiff filed its declaratory complaint after learning of Defendants' intent to bring an infringement claim for the '697 Patent."

- "[T]ransferring this action would avoid having a second court engage in claim construction of the '697 Patent."

- "[PerfX] has facilities in the Western District of Texas, key witness and employees for the parties reside in Texas, and a considerable portion of the alleged infringing

---

[4] References to "Exhibits" herein refer to exhibits to the Declaration of John Perry in Support of DynaEnergetics' Response in Opposition to Defendant's Motion to Transfer, filed contemporaneously herewith.

*Confidential – Outside Attorneys' Eyes Only*

sales occurred in Texas. Therefore, considerations of judicial economy and convenience, and the interest of justice weigh in favor of transferring this case."

Ex. D at 2-3.

DynaEnergetics brought this suit for infringement of the '697 Patent and U.S. Design Patent No. D904,475 (the "'475 Patent") on April 16, 2021. Dkt. 1. DynaEnergetics has also filed six other lawsuits in the WDTX against others for infringing the '697 Patent prior to or on the same day as this Action. The date of such filings and the lawsuits are:

- December 4, 2020: *DynaEnergetics Europe GmbH et. al. v. G&H Diversified Mfg. LP*, No. 6:20-cv-01110-ADA (W.D. Tex., Waco Div.);[5]

- December 30, 2020: *DynaEnergetics Europe GmbH et. al. v. NexTier Completion Sols. Inc.*, No. 6:20-cv-01201-ADA (W.D. Tex., Waco Div.);

- January 28, 2021: *DynaEnergetics Europe GmbH et. al. v. Rock Completion Tools, LLC et. al.*, No 6:21-cv-00084-ADA (W.D. Tex., Waco Div.)[6];

- January 28, 2021: *DynaEnergetics Europe GmbH et. al. v. GR Energy Services Operating GP LLC, et. al.*, No 6:21-cv-00085-ADA (W.D. Tex., Waco Div.);

- April 8, 2021: *DynaEnergetics Europe GmbH et. al. v. Horizontal Wireline Serv., LLC et. al.*, No 6:21-cv-00349-ADA (W.D. Tex., Waco Div.).

- April 16, 2021: *DynaEnergetics Europe GmbH et. al. v. Oil States Int'l, Inc. et. al.*, No 6:21-cv-00372-ADA (W.D. Tex., Waco Div.).[7]

All six cases which remain pending (the "Pending '697 Patent Cases") are also assigned to Judge Albright. On June 16, 2021, Judge Albright issued an Amended Standing Order Regarding Notice of Readiness for Patent Cases, setting the case schedule for all of the Pending '697 Patent Case and coordinating the cases for claim construction in less than 23 weeks. *See* Dkt. 19.

---

[5] Originally styled *DynaEnergetics Europe GmbH et. al. v. Yellow Jacket Oil Tools, LLC,* on February 12, 2021, DynaEnergetics filed an Amended Complaint adding G&H Diversified Manufacturing LP.  On August 5, 2021 the case against Yellow Jacket was transferred to the SDTX and the G&H case was retained in the WDTX. Ex. C.

[6] DynaEnergetics dismissed Rock Completion Tools, LLC and Rock Faithwell Int'l Co., Ltd. and is seeking a Default Judgment against the other defendant.

[7] This case was resolved by the parties and a stipulation of dismissal with prejudice was filed on July 26, 2021.

*Confidential – Outside Attorneys' Eyes Only*

## III.    LEGAL STANDARDS

Courts generally apply the rule favoring the forum of the first-filed case, "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993)).  Here, PerfX clearly filed "an anticipatory suit initiated for the purpose of obtaining a favored forum," which "constitutes a compelling circumstance that justifies a deviation from the first-to-file rule." *Epic Tech, LLC v. Arno Res., LLC*, No. 1:20-CV-577-LY, 2020 WL 5351078, at *5 (W.D. Tex. Sept. 4, 2020) (internal quotations and citations omitted); *see, e.g.*, *Bedrock Logistics, LLC v. Braintree Lab'ys., Inc.*, No. 3:16-CV-2815-M, 2017 WL 1547013, at *5 (N.D. Tex. Apr. 28, 2017) ("Courts often make an exception to the first-to-file rule when a plaintiff files an anticipatory suit."); *Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007) (anticipatory lawsuits deprive plaintiff of his choice of forum and justify not applying the first-filed rule).  While technically first-filed, the Colorado Action was ruled an anticipatory suit not entitled to deference with respect to plaintiff's choice of forum.  Ex. D at 2.

"[T]he court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *Excentus Corp. v. Kroger Co.*, No. 3:10–CV–0483–B, 2010 WL 3606016, at *1 (N.D. Tex., Sept. 16, 2010) (after a finding of substantial overlap, "it is up to the first-filed court to resolve the question of whether both cases should proceed" (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971))). At the end of the day, "[t]he factors guiding the [first-to-file] rule's application are ultimately 'equitable in

nature,' and lower courts are left an 'ample degree of discretion.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (citations omitted).

Section 1404(a) provides that a district court should exercise its discretion to transfer when appropriate for the convenience of the parties, as evaluated by the convenience factors. *See* 28 U.S.C. § 1404(a); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602-603 (5th Cir. 1983).  PerfX, as the movant, bears "the burden of demonstrating that 'the transferee venue is clearly more convenient.'" *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). The convenience factors are divided into private interest factors and public interest factors. *See In re Volkswagen*, 545 F.3d at 315. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id.* If the convenience factors favor the second-filed forum, then the second-filed forum is the appropriate forum to litigate the case. *See Mission*, 706 F.2d at 602-603; *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995).

## IV.    ARGUMENT

### A.    The Transfer Order Moots PerfX's Motion.

The District of Colorado—the first-filed court with respect to this dispute—has already conducted a first-filed/Section 1404 transfer analysis and expressly determined DynaEnergetics' infringement claims against PerfX should be adjudicated in the WDTX.  Seeing through PerfX's blatant forum shopping, the court held PerfX filed the Colorado Action "at least in part by the hope

of avoiding being sued in the Western District of Texas" and refused to give any deference to PerfX's choice of the Colorado forum. Ex. D at 2.  There is no need to waste judicial resources by having the WDTX repeat this analysis.[8]

If this Court accepts PerfX's own position that the issues in this Action substantially overlap with issues brought in the Colorado Action, the District Court of Colorado should decide—indeed, it already has decided—where the case will be litigated.[9] *Excentus Corp.*, 2010 WL 3606016, at *1 (citing *Mann Mfg., Inc.*, 439 F.2d at 408); *NexTier Completion Sols. Inc. v. DynaEnergetics Europe GmbH*, No. H-21-1328, 2021 WL 3620068, at *2 (S.D. Tex. Aug. 16, 2021). PerfX itself agrees, having previously asked this Court to stay this case pending the District of Colorado's decision on DynaEnergetics' then pending motion to transfer the case to the WDTX. Dkt. 12 at 2, n.2.

Under PerfX's own analysis, the transfer of the Colorado Action to the WDTX further tilts the 1404 convenience factors in favor of this District.  For example, PerfX previously argued as a practical consideration that the schedule set in Colorado and the service of DynaEnergetics' initial infringement contentions favored transfer to Colorado. Dkt. 12 at 10. Now, the Colorado schedule set by the Colorado court has been obviated and all proceedings there halted. It would make no sense, now, to send this case to Colorado. Even PerfX agrees "one court adjudicating the

---

[8] Following the issuance of the Transfer Order, DynaEnergetics contacted PerfX's counsel to discuss withdrawal of the Motion. It responded that it instead plans to seek a writ of *mandamus* with respect to the Transfer Order.

[9] While some overlap exists in the issues between this Action and the Colorado Action, there are differences that would support a finding this action was first filed and/or that the first-filed rule should be disregarded. For example, PerfX named DynaEnergetics' parent company, DMC Global Inc., as a party to the Colorado Action—despite it having no ownership interest in the '697 Patent—in an effort to prop up the minimal connections between this dispute and that forum.  Prior to transfer, DMC Global Inc. moved to dismiss the claims against it pursuant to Rules 12(b)(1) and 12(b)(6). That motion is fully briefed and now pending before this Court as a result of the transfer.  Additionally, this Action is the first-filed (and only) action where the '475 Patent is in the case. In the absence of complete overlap, "the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp., 665 F.3d 671, 678 (5th Cir. 2011). For purposes of adjudication of this Motion, DynaEnergetics agrees there is enough overlap between the two that the Transfer Order should control.

*Confidential – Outside Attorneys' Eyes Only*

cases in parallel would be more efficient than two courts adjudicating the cases."  Dkt. 12 at 10 (quoting *DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *9 (W.D. Tex. June 16, 2020)). Instead, practical considerations dictate that the two cases now pending in the WDTX should be consolidated in the interests of judicial economy, efficiency, and consistency.

**B.      Compelling Circumstances Require Adjudication of this Action in the Western District of Texas.**

Even if this Court were to undertake its own § 1404(a) analysis—despite that the first-filed District of Colorado court has already done so and determined they weigh in favor of adjudication in the WDTX—both the private and public interest factors, especially the WDTX's significant localized interest, weigh strongly in favor of keeping this case in in this District.

**1.      The Private Interest Factors Favor Retention in the WDTX.**

**i.      Judicial Economy and Consistency Weighs Heavily Against Transfer.**

In PerfX's own words, "[d]uplicative cases in two different courts is a waste of judicial and party resources" that risks "conflicting judgments from two different jurisdictions on the exact same issues." Dkt. 12 at 6. Now that the Colorado Action has been transferred to the WDTX, such duplication can be avoided only by adjudication of this dispute by this Court.

Five other Pending '697 Patent Cases are already being adjudicated by this Court. *See* Ex. C at 13 ("[P]ending cases in the current or proposed venue are a factor for transfer if they have overlapping issues.") (citing *In re Apple Inc.*, 979 F.3d at 1343). The schedule is already set in these cases. *See* Dkt. 19.  The District Court of Colorado recognized the inefficiencies created by having multiple courts engage in claim constriction and risk inconsistent rulings.  The need for uniformity particularly in cases involving the same patent—such as here—weighs heavily against transfer. *See Whistler Group v. PNI Corp.*, No. 3:03-CV-1536-G, 2003 WL 22939214, at *14

7

(N.D. Tex. Dec. 5, 2003) ("By permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice.") (citations omitted).  Keeping this Action in the WDTX alongside the other Pending '697 Patent Cases removes the risk of inconsistent rulings regarding the '697 Patent. *See Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 642 (E.D. Va. 2010) ("[T]he potential for inconsistent judgments in patent cases may be greater on average than for many other types of cases owing chiefly to the large number of issues that typically arise in most patent cases, including, for example, infringement and willful infringement, various invalidity issues under 35 U.S.C. §§ 102, 103, inequitable conduct, laches, waiver, not to mention *Markman* claim term determinations . . . .").  Having as many of the '697 Patent infringement cases as possible overseen by the same judge would result in consistent rulings on common issues like claim construction, infringement, validity, and damages, making the considerations of efficiency, consistency, and conservation of judicial resources weigh strongly against transfer.

A transfer of this Action to Colorado at this juncture would recreate the judicial inefficiencies that the District of Colorado just resolved through its transfer of the Colorado Action here. Transfer would require yet another Court to (1) become familiar with the complex perforation gun system technology claimed in the '697 Patent, (2) engage in claim construction of the '697 Patent, and (3) potentially rule upon invalidity arguments regarding the '697 Patent. Keeping this Action in the WDTX would conserve significant judicial and party resources. *See, e.g., In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("judicial economy is served by having the same district court try the cases involving the same patents"). "Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (finding

no abuse of discretion in district court's venue transfer because "although the convenience of the parties and witnesses did not favor either the Indiana or the California court, the interests of judicial economy would be served by trial in the Indiana court"). Here, the interests of justice and judicial economy are dispositive, or at least weigh heavily in favor of denying PerfX's Motion.

> ii.   **The Convenience of the Parties and Witnesses, the Cost of Attendance, and Relative Access to Sources of Proof Weigh Against Transfer.**

As the District of Colorado noted in conducting its own Section 1404(a) analysis, "key witnesses and employees for the parties reside in Texas." Ex. D at 3. The accessibility of witnesses is closely linked to the convenience of witnesses, which is "the most important factor in deciding a motion under § 1404(a)." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168-69 (10th Cir. 2010) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)). "In analyzing the accessibility of witnesses, the convenience of non-party witnesses weighs more heavily than the convenience of parties and their employees." *Potter Voice Techs. LLC v. Apple, Inc.*, No. 12-cv-01096-REB-CBS, 2013 WL 1333483, at *2 (D. Colo. Mar. 29, 2013) (citing *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F.Supp.2d 1039, 1043 (S.D. Tex. 2007)).

Here, the same party and non-party witnesses likely will be relevant both in this Action and the five Pending '697 Patent Cases because they involve the same parties (DynaEnergetics Europe and DynaEnergetics US), along with similar legal issues regarding infringement of the '697 Patent. For example, the inventors of the '697 Patent—three of whom are not DynaEnergetics employees—are expected to be witnesses in all of the Pending '697 Patent Cases. Adjudicating this Action here in the WDTX would allow the parties and witnesses to coordinate discovery and reduce the burdens on such witnesses. Transferring this Action to the District of Colorado would

*Confidential – Outside Attorneys' Eyes Only*

significantly inconvenience witnesses by subjecting them to overlapping depositions and trials in Colorado and Texas, yielding a much higher cost of attendance.

More generally, for third party witnesses, the WDTX is the more convenient forum for this dispute. Because of the Permian Basin's location primarily in the WDTX, potential third party witnesses such as DynaEnergetics' and PerfX's customers—who could provide evidence regarding, *inter alia*, the commercial success of the '697 Patent invention—are based in the WDTX or operate there. Ex. E at 13-14; Ex. A at 128:19-136:25. Keeping the case in the WDTX would lower the cost of witness attendance for any testimony and would allow for coordination with the cases already pending here.

PerfX improperly focuses on the location of its own witnesses in Colorado (specifically its President and one salesperson) and ignores the numerous witnesses and sources of proof located in the WDTX that must be considered in the balance of transfer analysis. Dkt. 12 at 8; *see Konami Digit. Ent. Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *3-4 (E.D. Tex. Mar. 23, 2009). PerfX cannot dispute that much of the evidence relating to the '697 Patent and PerfX's infringement is located here in the WDTX. A multitude of documentary and physical evidence relevant to the accused XConnect system (including the guns themselves) and PerfX's acts of infringement are located at PerfX's Midland, Texas facility and the accused products were used by PerfX's wireline pumpdown crews in Texas.[10] Ex. A at 52:21-56:18, 57:9-58:7, 60:23-



Vice President of Supply Chain, Kelly Goldwait, who is located in Houtson, Texas. Ex. A at 40:21-43:4, 44:17-25, 70:12-72:3, 76:18-77:13, 119:10-23. PerfX (now XConnect) has an employee, Zach Thomas, who is located in Midland, Texas and

63:14, 64:13-65:12; 80:2-81:7. Additionally, numerous PerfX employees with relevant knowledge are located in the WDTX, including Tim Roberts (Permian District Manager), Timothy Geary (Midland Operations Director), Tony Lopez (Midland Gun Shop Manager), Jason Wilcox (Midland XConnect Assembly Manger), and another key witness, Kelly Goldwait (VP of Supply Chain), is located in Houston. Dkt. 12 at 8; Ex. A at 26:19-27:10, 81:8-82:11, 119:4-18, 120:22-127:13; Ex. G at 5. PerfX's CTO Shelby Sullivan would have to travel from North Dakota to either Texas or Colorado. PerfX's professed deep connections to Colorado just simply don't bear out. PerfX only has six employees in Colorado, does not assemble any of the accused XConnect guns in Colorado, does not run any wireline crews from its location in Colorado, and any services provided in Colorado were run out of the Casper, Wyoming satellite facility with guns assembled in North Dakota. Ex. A at 21:2-23:11.

Despite PerfX's attempt to gloss over the record, it is also clear that, most, if not all, of DynaEnergetics' potential witnesses are located either within the WDTX or in Europe (with four such witnesses in Europe regularly traveling to the WDTX outside of COVID-19 restrictions). Ex. E at 12-13. DynaEnergetics witnesses located in or just outside of the WDTX include Gernot Burmeister (V.P. of Sales AME), Brian Engelkes (Blum Plant Controller), Todd Gooding (Regional Sales Manager West Texas), David Campbell (Manufacturing Process Engineer), Marcel Buerkler (Blum Operations Director), and Jerod Bright (Assembly Plant Manager). *Id.* at 8-9. DynaEnergetics' U.S. operations related to the allegations in this case are located in Texas, with a flagship location in Blum, meaning that certain relevant DynaEnergetics documents, such as manufacturing and shipping documents, as well as evidence regarding commercial success of

---

██████████████████████████████████████████████████████████ *Id.* at 120:6-21.
To the extent PerfX argues in its reply brief that the acquisition of its assets by Ranger and the corporate structure of XConnect post-transaction alters the 1404(a) analysis, DynaEnergetics reserves the right to address these new contentions.

*Confidential – Outside Attorneys' Eyes Only*

the patented DynaStage® perforating system, are located in the WDTX. Certainly the actual commercial embodiments of the '697 Patent—assembled entirely in Blum, Texas—are also located there.  None of DynaEnergetics' likely witnesses, documents, or relevant operations are located in Colorado. Consideration of all of the above factors strongly weighs against transfer.[11]

## 2.    The Public Interest Factors Favor Retention in the WDTX.[12]

### i.    WDTX's Localized Interest Weighs Heavily Against Transfer.

The significantly greater local interest of the WDTX in this dispute over Colorado weighs in favor of retention of the case. *See In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (local interest involves "work and reputation of … individuals residing in or near that district who presumably conduct business in that community"). Specifically, the WDTX has a localized interest in resolving the parties' dispute because the Permian Basin and DynaEnergetics' flagship US facility are located here, and PerfX's extensive presence in the WDTX. "[The local interest factor] most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple Inc.*, 979 F.3d at 1345. This Court, itself, has recently opined in one of the other '697 cases on the significant contacts between the instant dispute and this District:

> A majority of '697 patent cases from DynaEnergetics are set in the WDTX, however, others are still being tried elsewhere in the state. DynaEnergetics manufactures and assembles all competing DynaStage products in the WDTX. Customers use DynaEnergetics' products and the infringing products in the Permian Basin. In FY2020, out of approximately DynaEnergetics' $146 million in total revenue, over $100 million was directly tied to products made in the Western District, and sold to the Western District or deployed to drilling sites in the Western District. The harm and financial impacts from the alleged infringement are primarily felt in the WDTX, which is also a consideration. *See In re TS Tech USA*

---

[11] PerfX's argument that keeping this Action in the WDTX would leave the third party DMC Global, Inc. (DynaEnergetics' parent corporation and party to the Colorado Action) outside the subpoena power of this Court can be disregarded because PerfX has made no showing of unwillingness. "When no witnesses' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor." *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006).

[12] Public factors three and four are not in dispute.

*Confidential – Outside Attorneys' Eyes Only*

> *Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). There are significant connections
> between the WDTX and the events which gave rise to the suit. Thus, this factor
> weighs in favor of retaining the case in the WDTX.

Ex. C at 14-15 (internal docket citations omitted). This week, the Federal Circuit denied G&H's

Petition for Mandamus seeking to overturn this ruling, and upheld this Court's findings that the

WDTX has a significant local interest and connections to events giving rise to this other Pending

'697 Case—including the manufacture of DynaStage® products in Blum, Texas, the bulk of

DynaEnergetics' revenue being directly tied to products that are made, sold, and deployed in the

WDTX, and the harm/financial impacts from the infringement being primarily felt in this District.

Ex. H.

DynaEnergetics opened its flagship US location in Blum, Texas in November 2018 with

the "objective of becoming the employer of choice for this region," and now currently has the

largest number of employees and largest footprint of any DynaEnergetics facility in the United

States. Ex. E at 11-12. DynaEnergetics US opened the 74,000-square-foot state-of-the-art campus

in 2018 to support growth of its highly successful DynaStage® perforating system (protected by

several patents including the '697 Patent). *Id.* And DynaEnergetics US manufactures components

of, assembles, and distributes its patented DynaStage® system from the Blum facility. *Id.*

Moreover, many of DynaEnergetics' customers, direct (service companies) and indirect

(exploration & production companies), are based in the WDTX or operate there, with Midland,

Texas being the epicenter because of the Permian Basin. *See id.* at 13-14.

Furthermore, PerfX is engaging in a significant level of infringing activity in the Permian

Basin, in the WDTX. PerfX "manufactures" the accused XConnect guns by assembling the

components at the gun shop located at its Midland, Texas facility. Ex. A at 40:21-43:4, 44:17-25;

70:12-72:3, 76:18-77:13. A significant number of PerfX's customers are located in and have well

sites in the WDTX. *Id.* at 128:19-136:25. Despite Mr. Thomas' statements in his June 15, 2021 declaration that the "vast majority" of revenues for XConnect and instances of shots fired for the XConnect product were outside of Texas,[13] discovery in this matter has established—and PerfX's President, Mr. Thomas, admitted in his



 Ex. A at 78:18-79:10, 96:2-97:14, 104:9-106:17, 109:17-110:17, 112:24-115:13, 117:14-118:21. Mr. Thomas testified:

*Id.* at 118:3-21. PerfX also marketed and sold perforating services using the accused XConnect system to customers that operated in West Texas. *Id.* at 137:15-23.

There can be no doubt that the operative facts relevant to this Action are much more closely tied to the WDTX than the District of Colorado, and residents of the WDTX have a direct or indirect interest in adjudicating this case. Consideration of this factor heavily favors transfer.[14]

---

[13] This related only to the timeframe of March 2020 through December 2020. Ex. A at 96:2-97:14.

[14] PerfX's reliance on *DynaEnergetics Europe GmbH v. Hunting Titan, Inc.* is inapposite. In that case, the court had to make a decision between the WDTX and the SDTX—where both DynaEnergetics and Hunting Titan have their U.S. headquarters and where another infringement action involving these parties and related patents had been pending for more than two years. Here, the only true relationship between this case and the District of Colorado is an anticipatory declaratory judgement action that should be disregarded.

*Confidential – Outside Attorneys' Eyes Only*

> ii.    **Administration difficulties factor favors retention in the WDTX.**

The administrative difficulties flowing from court congestion also weigh against transfer to the District of Colorado. "[W]ith an understanding that this factor carries a reduced weight due to its speculative nature, the Court may consider how quickly a case will come to trial and be resolved when applying the transfer for convenience analysis." Ex. C at 14 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). "[T]he most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emps. Mut. Cas. Co***Error! Bookmark not defined.**, 618 F.3d at 1169. PerfX concedes "the time to trial in Colorado may be longer than reported statistics for" the Western District of Texas. Dkt. 12 at 10.[15]   The marginally increased court congestion in the Western District of Texas is far outweighed by the much shorter time to trial and the increased efficiency resulting from the same court adjudicating cases involving the same patent. Thus, this factor weighs against transfer.

## V.    CONCLUSION

As the District of Colorado has already determined, this case belongs in the WDTX along with the five other cases currently pending here. Thus, for the foregoing reasons, DynaEnergetics respectfully requests that the Court deny PerfX's Motion to Transfer.

---

[15] For the 12-month period ending June 30, 2021, for the Western District of Texas, (1) the median time from filing to disposition for civil cases was 7.7 months, (2) the median time from filing to trial for civil cases was 23.8 months, (3) the pending cases per judge was 749, and (4) the average weighted filings per judge was 912. *Comparison of Districts – 12-Month Period Ending June 30, 2021*, *Federal Court Management Statistics*, United States Courts (last visited 09/28/2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2021.pdf, at 5. In comparison, for the District of Colorado, (1) the median time from filing to disposition for civil cases was 7.8 months, (2) the median time from filing to trial for civil cases was 32.8 months, (3) the pending cases per judge was 564, and (4) the average weighted filings per judge was 638. *Id.* at 10.

*Confidential – Outside Attorneys' Eyes Only*

Dated: September 29, 2021

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
Texas Bar No. 00789886
Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Barry J. Herman (admitted *pro hac vice*)
Maryland Federal Bar No. 26061
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (admitted *pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (admitted *pro hac vice*)
Georgia Bar No. 874494
John G. Perry (admitted *pro hac vice*)
Georgia Bar No. 141609
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com
Email: Christine.Dupriest@wbd-us.com

*Confidential – Outside Attorneys' Eyes Only*

Email: John.Perry@wbd-us.com

Lisa J. Moyles (admitted *pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (admitted *pro hac vice*)
New York Bar No. 4450953
MOYLES IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

*Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

*Confidential – Outside Attorneys' Eyes Only*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 29, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Eric H. Findlay*
Eric H. Findlay

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document is being filed under seal pursuant to the Court's Standing Order Regarding Filing Documents Under Seal in Patent Cases and Redacted Pleadings.

*/s/ Eric H. Findlay*
Eric H. Findlay
