# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERFX WIRELINE SERVICES, LLC <br><br> Defendant. | Civil Action No: 6:21-cv-00371-ADA |

**DYNAENERGETICS EUROPE GMBH AND DYNAENERGETICS US, INC.'S
SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 3

    A.   The '697 Patent .................................................................................................... 3

        1.   "tandem seal adapter" (asserted claim 1) ..................................................... 3

        2.   "connected to" (asserted claim 1) ................................................................. 5

        3.   "pin connector assembly" (asserted claim 1) .............................................. 6

        4.   "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (asserted claim 2) ........................................................................................ 7

    B.   The '475 Patent .................................................................................................... 8

III. CONCLUSION ............................................................................................................... 10

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") submit this Sur-Reply Claim Construction Brief in support of their proposed construction for a disputed term of the asserted patent as well as addressing terms that Defendant XConnect Wireline, LLC ("XConnect")[1] has proposed for construction.

## I.   INTRODUCTION

In its continued effort to improperly limit claim scope to suit its noninfringement and invalidity positions, XConnect continues to repeatedly point to a statement made by DynaEnergetics' expert for a single disputed term, "tandem seal adapter," from a related patent in a different litigation[2] to somehow justify that *all* of its proposed constructions are correct. But in that same litigation—even accounting for DynaEnergetics' expert's statement that "tandem seal adapter" is not a common industry term—Judge Lake agreed with DynaEnergetics and recognized that the term "tandem seal adapter" does not need construction. Ex. M, *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, No. CV H-20-2123, 2021 WL 5494932, at *8 (S.D. Tex. Nov. 23, 2021) (the "'938 Patent Markman Decision") ("After carefully considering the parties' arguments and the applicable law, the court concludes that the term 'tandem seal adapter' is subject only to its plain and ordinary meaning, which needs no further construction."). That determination is even more appropriate here because, as noted in the DynaEnergetics Responsive Claim Construction Brief ("Responsive Brief") (Dkt. 40 at 6), the characteristics of the "tandem seal adapter" as used in the claims of the '697 Patent are even *more* expressly defined by the claim language than in the '938 Patent claims, which provides definitive support for affording the term its plain and ordinary meaning.

---

[1] Defendant PerfX Wireline Services, LLC recently changed its name to XConnect Wireline, LLC.
[2] U.S. Patent No. 10,472,938 (the "'938 Patent") asserted in *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, Civil Action No. 4:20-cv-02123 (S.D. Tex.) (the "'938 Patent Litigation").

1

Furthermore, the various '697 Patent defendants revised their proposed constructions midway through the claim construction *briefing* (not prior to submission of the JCCS), ostensibly in order to "harmonize" their proposed constructions. Putting aside the impropriety of such a belated revision, the fact that defendants could not (and for some terms, still do not) agree on a single construction for the disputed claim terms demonstrates the weakness of their positions. As the Southern District of Texas recognized for the '938 Patent,[3] the '697 Patent does not use highly technical language or terms of art that would be difficult for a lay jury to understand. The claims utilize little, if any, technical jargon and are written in plain English. Yet XConnect and the other defendants propose to construe a large number of terms, and they present complicated interpretations in an effort to aid their own non-infringement and invalidity theories, not to help the jury or this Court. For the single term that DynaEnergetics proposes for construction, "connected to," DynaEnergetics is forced to propose a construction that is consistent with how a POSITA would understand the intrinsic record because of these defendants' attempt to improperly stretch the scope of the prior art to fit their invalidity positions.

For U.S. Design Patent No. D904,475 (the "'475 Patent"), XConnect continues to ask this Court to contradict controlling Federal Circuit precedent and convert the claim construction analysis into a premature dispositive motion for summary judgment without any controlling legal authority or reason to do so. The Court should reject XConnect's attempt to unfairly accelerate a fact-intensive inquiry determining design patent validity to this early claim-construction stage.

---

[3] The '697 Patent is a continuation from the '938 Patent and shares the same specification. In the '938 Patent Markman Decision, the court found that all of the disputed terms were subject to their plain and ordinary meaning and no construction was required.

## II. ARGUMENT

### A. The '697 Patent

#### 1. "tandem seal adapter" (asserted claim 1)

"[T]he words 'tandem,' 'seal,' and 'adapter' are 'simple English words whose meaning is clear and unquestionable' and require no further construction." '938 Patent Markman Decision, 2021 WL 5494932, at *8 (citing *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004)). Though XConnect continually points to the expert statement made in the '938 Patent Litigation as the basis that "tandem seal adapter" requires construction, the Southern District of Texas court ruled that no construction was necessary and agreed with DynaEnergetics that "[t]he term 'tandem seal adapter' – though not a common industry term – is well-defined and described in the claims and specification of the '938 Patent," and therefore "subject to its plain and ordinary meaning." *Id*. at *6, *8. The plain and ordinary meaning is even more appropriate for the term "tandem seal adapter" as it appears in the '697 Patent, which has clear claim language that expressly defines the structure (first end, second end, bore) and configuration (connected to the first outer gun carrier, configured to provide a seal between the first detonator and an environment on the second end) of the claimed tandem seal adapter. '697 Patent at 11:21-47; *see also* Dkt. 40-3 ¶¶ 59-60, 66. Accordingly, consistent with the '938 Patent Markman Decision, no construction is needed for "tandem seal adapter."

Despite the clear evidence that the plain and ordinary meaning should rule, XConnect continues to insist upon exactly what the Federal Circuit has "repeatedly warned against," proposing to confine "tandem seal adapter" to particular exemplary embodiments in the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification . . . into the claims absent

3

a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). XConnect does not even dispute that it is attempting to impose additional limitations from the embodiments into its proposed construction, requiring "***two** gun carriers that are **directly attached to each other***."[4] Instead, XConnect argues that because the phrase "tandem seal adapter" as a whole is not a term of art, the Court may import limitations from the specification. Not so, and XConnect's citation to *Indacon* does not overcome that bedrock principle. The Federal Circuit has held that even if a claim term has no ordinary meaning it should not, based solely on that fact, be restrictively construed. *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336–37 (Fed. Cir. 2005) (holding that even though "[t]he record shows that the term 'executable application' does not have a customary meaning in the computer science field," "the district court ***appropriately declined to impose a sharp limitation on its scope***," particularly when "the specification repeatedly indicates that the preferred embodiment is only one possibility for practice of the invention.") (emphasis added). A POSITA would recognize that tandem seal adapter acts as a type of a sub, which Defendants admit has an established meaning in the art. Dkt. 61-3, Rodgers Decl. ¶¶ 62-67. Even in cases where a claim limitation recites an uncommon phrase, the Federal Circuit has held that the plain meaning of each word should be individually applied as the first step in construing the phrase. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369, 1372 (Fed. Cir. 2003) ("[S]imply because a phrase as a whole lacks a common meaning does not compel a court to abandon its quest for a common meaning and disregard the established meanings of the individual words."); *see also Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016).

---

[4] Though XConnect states that it has "no objection to other defendants' proposed construction adding 'tools,'" XConnect does not appear to actually join the other defendants' so-called "harmonized" proposed construction for "tandem seal adapter," and still refers to it as "***XConnect's*** construction." Dkt. 46 at 6 (emphasis added).

4

The defendant in the '938 Patent Litigation also attempted to construe "tandem seal adapter" in a way that imposed an additional limitation, but the Southern District of Texas court recognized that "adopting Defendant's construction will not clarify a disputed term but, instead, will change the scope of the patented claims." '938 Patent Markman Decision, 2021 WL 5494932, at *8. For the same reason, this Court should reject XConnect's (and the other defendants') proposed construction that imposes limitations not present in the claims and instead hold that "tandem seal adapter" is subject to its plain and ordinary meaning.

### 2. "connected to" (asserted claim 1)

While DynaEnergetics acknowledges that the meaning of the term "connected to" may appear readily understandable, DynaEnergetics is forced to propose this specific claim construction for "connected to," based on the Defendants' attempt to stretch a prior art reference to suit their invalidity positions. Specifically, XConnect and other defendants have relied upon prior art references in which a component was merely held or positioned between two other components, without any physical connection or formation of a seal, and argued that such an arrangement satisfied the "connected to" limitation. Ex. N, XConnect's Preliminary Invalidity Contentions, at Ex. A-8; Dkt. 35-15 at 63-65. As explained in DynaEnergetics' Responsive Claim Construction Brief ("Responsive Brief"), a POSITA would understand that the claimed tandem seal adapter needs to be "connected to" the first outer gun carrier in a manner that is *sufficiently secure* as to provide a seal between an interior of the first outer gun carrier (*i.e.*, as recited by claim 1, "the first detonator [is] positioned within the first outer gun carrier") and the second end of the tandem seal adapter. *See* Dkt. 40 at 6-8 (citing Dkt. 40-3 ¶¶ 71-72).

Furthermore, the claim language supports how the term "connected to" should be understood to be a more secure coupling than something that is merely touching or "abutting," which is used in claim 19 to refer to "a biasing member positioned within the pressure bulkhead

5

and *abutting* the pin head portion of the inner contact pin." '697 Patent at 14:6-8; *Digit. Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *8 (W.D. Tex. Jan. 23, 2020) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms." (alteration in original) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*., 381 F.3d 1111, 1119 (Fed. Cir. 2004))). As DynaEnergetics explained in its Responsive Brief, a POSITA would recognize that the term "connected to" is used in reference to a sufficiently secure connection between the tandem seal adapter and the first outer gun carrier to form a seal, whereas the term "abutting" is used by the patent when referring to something that simply needs to touch.

Thus in the context of the '697 Patent, a POSITA would understand the term "connected to" to mean "joined or coupled in a manner that resists separation and not merely by physical contact" and accordingly, the Court should adopt DynaEnergetics' position.

### 3.  "pin connector assembly" (asserted claim 1)

XConnect misleadingly attempts to frame the argument concerning "pin connector assembly" as "primarily centered on the proper construction of 'assembly.'" Dkt. 46 at 8. But this is not true. The core dispute is whether XConnect has shown that DynaEnergetics clearly and unambiguously disclaimed or disavowed claim scope in the specification, such that the plain and ordinary meaning should be limited to XConnect's proposed construction. *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("There are only two exceptions to this general rule [that terms should be given their plain and ordinary meaning]: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.").

On that front, XConnect falls far short of what the law requires. Indeed, XConnect provides no analysis of any disavowal or disclaimer from DynaEnergetics to support why "pin connector

6

assembly" should be construed to include the additional limitations imposed in XConnect's proposed construction. Instead, XConnect focuses on the disclosures in specific embodiments of the '697 Patent in order to import those limitations into the claims.[5] This is inadequate as a matter of law. *Altiris*, 318 F.3d at 1369, 1372 (describing a "'heavy presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art" and noting that "merely because the specification only describes one embodiment is not a sufficient reason to limit the claims to that embodiment" (citation omitted)).

Furthermore, XConnect fails to rebut DynaEnergetics' argument that XConnect's proposed construction includes additional language that is unduly limiting and redundant, requiring the "plurality of parts" to be "fitted together" in order "to form a component with pins" that is "electrically connecting" either "two guns or tools." Indeed, XConnect fails to explain why "*two guns or tools*" are somehow required in the pin connector assembly, when the claim language imposes no such requirement. These additional limitations and redundant terms in XConnect's proposed construction are both improper and unnecessarily confusing, and XConnect has shown no disclaimer or disavowal of claim scope that would constitute a legitimate basis for imposing these limitations into the construction of "pin connector assembly." Accordingly, the Court should reject defendants' proposed construction and instead hold that "pin connector assembly" is subject to its plain and ordinary meaning.

### 4. "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (asserted claim 2)

Though XConnect primarily relies on *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008) for its indefiniteness argument, XConnect failed to recognize or

---

[5] XConnect mischaracterizes the disclosure in Fig. 19, which shows a pin connector assembly comprising a single solid pin connector.

address that *Halliburton* applied the outdated "insolubly ambiguous" indefiniteness standard that was expressly overturned by the Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). *See also Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1379 (Fed. Cir. 2015) ("The Court has accordingly modified the standard by which lower courts examine allegedly ambiguous claims; we may now steer by the bright star of 'reasonable certainty,' rather than the unreliable compass of 'insoluble ambiguity.'"). As explained in the Responsive Brief (Dkt. 40 at 11-14), under the current standard for indefiniteness, a POSITA with the relevant industry knowledge would recognize that the improvements taught by the '697 Patent provide "reasonable certainty" about the claimed inventions' scope. *Nautilus*, 572 U.S. at 901.

In addition, as DynaEnergetics explained in its Responsive Brief, the specification and figures of the '697 Patent describe and show the claimed subject matter more than sufficiently to enable a POSITA to make and use this more robust wireless assembly without undue experimentation, with an understanding that the invention of claim 2 relates to the elimination of wired connections and associated interruptions to the wired electrical feedthrough. *See* Dkt. 40 at 13-14. On the other hand, XConnect's argument is based on clearly unrelated notions of electrical connection failures generally—e.g., due to corrosion, breakage, or failure of other gun components—while ignoring the clear support for the invention in the claim and specification. Accordingly, the limitation is enabled and not indefinite.

### B. The '475 Patent

DynaEnergetics does not dispute that claim construction must occur for a design patent before infringement can be determined. However, consistent with Federal Circuit guidance, the appropriate procedure to make the finding of fact whether a design patent is functional or ornamental is either through a motion for summary judgment or at trial. Though XConnect cites to a number of Federal Circuit cases in support of its argument, none of them conducted claim

8

construction for a design patent during the Markman phase. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) (claim construction occurred during a jury trial); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1399 (Fed. Cir. 1997) (summary judgment of claim construction). Desperate to find support for its untenable position, XConnect claims that the "Federal Circuit confirmed a district court's claim construction that occurred during the Markman phase," Dkt. 46 at 4, even though the Federal Circuit opinion made it clear that the district court conducted claim construction during the bench trial. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1290 (Fed. Cir. 2010) ("After ***a bench trial***, the district court found that [defendant] did not infringe [the asserted design patent]. Because the court ***correctly construed*** the claim at issue and correctly determined that the patent was not infringed, we affirm." (emphasis added)); *see also Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1048 (D. Ariz. 2009) ("Trial of the infringement issue took place on April 2, 2009. This order states findings of fact and conclusions of law."), *aff'd*, 597 F.3d 1288 (Fed. Cir. 2010).

Furthermore, every district court case cited by XConnect that determined whether a patented design is functional or ornamental during the "claim construction phase" were cases where ***only*** design patents were asserted. *See Sofpool, LLC v. Intex Recreation Corp.*, No. 2:07-CV-097, 2007 WL 4522331, at *1 (E.D. Tex. Dec. 19, 2007) ("Two design patents are at issue in this case."); *Lu v. Hyper Bicycles*, Inc., No. CV 20-11739-NMG, 2021 WL 4948203, at *1 (D. Mass. Oct. 25, 2021) (two design patents); *Skechers U.S.A., Inc. v. Eliya, Inc.*, No. CV1602820SJOAGRX, 2017 WL 3449594, at *1 (C.D. Cal. Mar. 14, 2017) (asserting three design patents); *Shure Inc. v. Clearone, Inc.*, No. CV 19-1343-RGA-CJB, 2020 WL 6074233, at *1 (D. Del. Oct. 15, 2020) (one design patent[6]). Accordingly, the "claim construction phase" for those

---

[6] Though a utility patent was originally asserted, the case was stayed as to the utility patent before the claim construction period. *See Shure Inc.*, 2020 WL 3250176, at *2 n.2.

9

cases was effectively a summary judgment motion for the design patents, as there were no utility patents asserted in those cases for the courts to conduct a traditional claim construction analysis.

XConnect also argues that determining functionality outside of claim construction "would force the parties to do costly, but unnecessary, discovery." Dkt. 46 at 3. Not true. XConnect can file a summary judgment motion on this issue at any time, which would provide both parties with the appropriate briefing space to fully address all the issues relating to the validity of the '475 Patent. By forcing the parties to address the issue here at claim construction, DynaEnergetics is unfairly constrained to the limited briefing space that it must share with the claim construction arguments for the '697 Patent, which actually are ripe at this time. By addressing the functionality issue at the appropriate time, DynaEnergetics would be able to fully dispute the untrue statement made by XConnect that "it does not appear there is much dispute about XConnect's proposed claim construction." Dkt. 46 at 2. As explained in DynaEnergetics' Responsive Brief (Dkt. 40 at 14-20), DynaEnergetics fully disagrees with XConnect's claim construction positions and arguments, including at least XConnect's insistence on construing the design patent at the claim construction stage, misapplication of design patent law regarding the functionality of the '475 Patent, and erroneous attempt to ascribe a verbal construction to the claimed design.

Accordingly, XConnect offers no persuasive legal authority or compelling reason to support its attempt to invalidate the '475 Patent under the guise of claim construction. Accordingly, determining whether the claimed design is primarily functional (and therefore invalid) is not appropriate at the claim construction stage.

### III. CONCLUSION

For the reasons set forth herein, DynaEnergetics respectfully requests that the Court reject XConnect's proposed constructions and adopt DynaEnergetics' proposed constructions.

Dated: December 6, 2021                                Respectfully submitted,

By:  /s/Eric H. Fiindlay
Eric H. Findlay
Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Mark D. Siegmund
Texas Bar No. 24117055
STECKLER WAYNE COCHRAN CHERRY, PLLC
8416 Old Mcgregor Road
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689
Email: mark@swclaw.com

Barry J. Herman (*pro hac vice*)
Maryland Federal Bar No. 26061
Stephanie M. Nguyen (*pro hac vice* to be filed)
DC Bar No. 1046300
Julie C. Giardina (*pro hac vice* to be filed)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5873
Email: Stephanie.Nguyen@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (*pro hac vice*)
Georgia Bar No. 874494
John G. Perry (*pro hac vice*)
Georgia Bar No. 141609

>
> WOMBLE BOND DICKINSON (US) LLP
> 271 17th Street, NW, Suite 2400
> Atlanta, GA 30363
> Telephone: (404) 888-7366
> Email: Preston.Heard@wbd-us.com
> Telephone: (404) 962-7538
> Christine.Dupriest@wbd-us.com
> Telephone: (404) 879-2441
> John.Perry@wbd-us.com
>
> Lisa J. Moyles (*pro hac vice* to be filed)
> Connecticut State Bar No. 425652
> Jason M. Rockman (*pro hac vice* to be filed)
> New York Bar No. 4450953
> MOYLES IP, LLC
> One Enterprise Drive, Suite 428
> Shelton, CT 06484
> Telephone: (203) 428-4420
> Email: lmoyles@moylesip.com
> Email: jrockman@moylesip.com
>
> ***Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Eric H. Findlay*
Eric H. Findlay
